IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:06CV80-V

| | |
|---|---|
| LLOYD D. RICH,  )<br>      Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>JO ANNE B. BARNHART,  )<br>Commissioner of Social  )<br>Security Administration,  )<br>      Defendant._____)<br>  ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" and "Memorandum in Support ..." (both document #9), filed November 17, 2006; and Defendant's "Motion For Summary Judgment" (document #10) and "Memorandum in Support of the Commissioner's Decision" (document #11), both filed January 12, 2007. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On June 13, 2003, the Plaintiff filed an application for Social Security Disability benefits ("DIB"), alleging he was unable to work as of January 20, 2002 due to back and right leg pain. The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on March 18, 2005. On October 27, 2005, the ALJ issued a decision denying the Plaintiff's claim. The Plaintiff filed a timely Request for Review of Hearing Decision. On May 12, 2006, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on July 12, 2006, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

Relevant to the issues raised on appeal, the Plaintiff testified that he was born on January 10, 1953, and was 52 years-old at the time of the hearing; that he had a driver's license; that he had completed high school; that he could read and write; that he had prior work experience as a warehouse worker and a maintenance worker, both at a furniture manufacturing facility; that he was no longer able to work due to leg numbness and "heart problems"; that he was able to care for his personal needs; that he drove a car; and that he could stand 30 minutes and sit 20 to 30 minutes; but that he could not walk for exercise.

Kenneth Cloninger, M.D., an Agency medical expert, testified that the Plaintiff had <u>not</u> had "thorough workups" for heart disease or cervical disc disease; that a stress test was negative; that Plaintiff's back pain was effected by the weather; and that the Plaintiff's alleged impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings").

On September 8, 2003, a Dr. Morton (whose first name is obscured), who is a medical expert for North Carolina Disability Determination Services ("NCDDS"), completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 50 pounds and

frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; that the Plaintiff should avoid more than occasional stooping or crouching; and that otherwise, the Plaintiff could perform medium work. Dr. Morton also noted that the Plaintiff's medical records showed that he walked normally, had normal muscle strength, and had normal range of motion except in his lumbar spine.

A Report of Contact dated July 15, 2003 reflects that the Plaintiff admitted that the only pain medication he took was ibuprofen (two to three times per week); that he used heat or ice packs about once each week; that he slept well at night; that the weather effected his pain; that he drove a car and mowed the lawn; that he could do "pretty much all" household chores; that he could not stoop or crouch; and that he could lift 25 to 30 pounds.

Although the Plaintiff assigns error to the ALJ's treatment of the opinion of one of his treating physicians, Frank Fornasier, M.D., the parties have not assigned error to the ALJ's recitation of the medical records (presented to the ALJ at or after the hearing). Moreover, the undersigned has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The evidence of record indicates that the claimant has been diagnosed with thoracolumbar disc disease and coronary artery disease. He was involved in an automobile accident in September 2001 and subsequently experienced neck and back pain. A magnetic resonance imaging (MRI) scan of his mid and lower lumbar spine was ordered, which shows only minimal compression on the exiting nerve root therein (Exhibits 2F and 9F/28). In December 2001, the claimant received a series of lumbar epidural steroid injections (Exhibit 9F). In January 2002, Dr. Ralph Maxy diagnosed him with a severe lumbar strain with a radicular syndrome, but with no focal etiology. A functional capacity evaluation was obtained, which reveals that the claimant can lift at most 40 pounds. Dr. Maxy restricted him to lifting 40 pounds at most with no repetitive bending, twisting, or stooping. Dr. Maxy noted that physical examination continues to reveal no evidence of radicular findings and root tension signs (Exhibit 2F). The claimant received physical therapy in February 2002 for lumbar strain (Exhibit IF).

On August 16, 2003, the claimant underwent a consultative examination by Aregai Girmay, M.D. The claimant complained of back and right leg pain. He reported that he was taking no medications. Physical examination shows that he was 71 inches tall and weighed 266 pounds; his gait was normal; he has right ankle edema; power was 5/5 in the upper and lower extremities bilaterally; range of motion evaluation was unremarkable except that he has abnormal range of motion on the thoracolumbar spine; and a straight leg raise test done at 30 degrees was negative. The remainder of the examination was within normal limits. The assessment was lower back pain radiating to the right leg. Dr. Girmay reported his limitations are moderate and he can walk 100 feet without difficulty (Exhibit 3F).

The claimant was hospitalized on September 19, 2003 for complaints of chest discomfort and an abnormal thallium study demonstrating inferior ischemia. He presented for cardiac catheterization, which he tolerated well with no complications. He was discharged the next day and diagnosed with coronary artery disease (Exhibit 5F). In May 2004, the claimant was hospitalized for a gastrointestinal bleed. A nuclear red blood cell scan was negative on May 6, 2004. He was discharged after one day with a diagnosis of lower gastrointestinal bleed attributed to postpolypectomy bleeding (Exhibits 10F and 14F). He was treated in the emergency room for chest pain and diagnosed with chest wall pain. He was prescribed Ultram and advised to follow-up with his personal physician (Exhibit 1 IF). The undersigned finds the claimant's thoracolumbar disc disease and coronary artery disease are severe impairments....

The claimant presented to the hospital with complaints of chest pain on October 13, 2003. He was ruled out for myocardial infarction. By the next day he felt the pain in his chest and left arm was gone. His EKG showed sinus rhythm with no acute ST segment changes. A chest X-ray showed no acute ST segment changes. He was discharged on October 14, 2003 and diagnosed with musculoskeletal chest and back pain and coronary artery disease status post stenting (Exhibit 6F).

Records from Dr. Paspa include an exercise stress treadmill that was negative. At a follow-up visit on November 6, 2003, it was noted that his scan showed no evidence of ischemia and left ventricular function was normal. The impression includes coronary artery disease. Dr. Paspa advised claimant to return in 6 months (Exhibit 12F).

The claimant was hospitalized on January 28, 2004 with complaints of chest pain, nausea, and vomiting. He underwent left heart catheterization by Dr. Philip Paspa without complications and percutaneous transluminal coronary angioplasty with no complications. He had normal left ventricular function with an ejection fraction estimated at 65%. He was prescribed Plavix and Keflex and discharged on January 30, 2004. His diagnoses include single vessel coronary artery disease (Exhibit 7F).

The claimant was hospitalized on February 21, 2004 due to complaints of chest pain. He ruled out for myocardial infarction with negative cardiac enzymes. A thallium study did not show any evidence of ischemia. His medications were adjusted and he was discharged on February 24, 2004 with chest pain, noncardiac, and history of coronary disease (Exhibit 8F).

Records from Dr. Frank Fornasier reveal the claimant was prescribed Nexium. In December 2003, the claimant and reported his chest pain resolved after starting this medication. At a visit in February 2004, Dr. Fornasier reported the claimant's coronary artery disease was stable (Exhibit 9F).

Dr. Fornasier examined the claimant on June 14, 2004 and reported the claimant's vital signs are stable with no significant edema. The claimant returned on October 14, 2004 at which time his coronary artery disease was stable (Exhibit 13F).

The claimant was hospitalized on February 4, 2005 with complaints of chest pain. He underwent left heart catheterization on February 7, 2005 with findings of insignificant coronary disease and normal left ventricular function with patent stent in the posterior descending artery branch off the left circumflex and an ejection fraction estimated at 72%. A chest X-ray showed no acute disease. The claimant was continued on his current medications and discharged on February 7, 2005 with diagnoses include noncardiac chest pain and insignificant coronary artery disease (Exhibit 15F).

On February 14, 2005, the claimant presented to Dr. Fornasier complaining of chest pain. physical examination shows his vital signs are stable, increased weight by 9 pounds, and there was no significant pedal edema. The remainder of the examination was unremarkable. The assessment was chest pain likely musculoskeletal or gastrointestinal. Dr. Fornasier refilled Ultram and continued him on Lipitor (Exhibit 16F).

The claimant complained of right leg numbness and a CT myelogram was ordered. The report dated April 18, 2005 shows small right-sided disc abnormalities at L4 and L5 with no displacement or impingement. It was noted that he does not appear to be a surgical candidate. On June 7, 2005, the claimant reported problems with palpitations and an irregular heartbeat. Physical examination shows his weight was increased. Dr. Fornasier continued his medications (Exhibit 17F).

On August 5, 2005. Dr. Fornasier reported the claimant was unable to work due to coronary artery disease that has been unstable and more significantly with chronic low back pain. Dr. Fornasier stated he did not feel the claimant was able to work at this time (Exhibit 18F)....

The claimant told Dr. Girmay that he does yard work and uses a lawnmower (Exhibit 3F).

(Tr. 21-23.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

6

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[1]   The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff suffered thoracolumbar disc disease and coronary artery disease, which were severe impairments within the meaning of the Regulations, but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that Plaintiff was unable to perform his past relevant work and had no transferable skills; that the Plaintiff had the residual functional capacity for light work[2] with only occasional stooping or crouching; that the

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:
  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

7

Plaintiff was an "individual closely approaching advanced age" with a high school education; and that based on the Plaintiff's exertional capacity for light work, and his age, education, and work experience, Medical-Vocational Rules 202.20 and 202.13 mandated a finding of not disabled.

The Plaintiff appeals the ALJ's determination of his residual functional capacity ("RFC"). See Plaintiff's "Motion for Summary Judgment" and "Memorandum in Support ..." (both document #9). In short, undersigned finds, for the reasons set forth below, that there is substantial evidence supporting the ALJ's finding concerning the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited his ability to work. Relying on evidence in the medical record, Agency medical evaluators found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; that the Plaintiff should avoid more than occasional stooping or crouching; and that otherwise, the Plaintiff could perform medium work. Moreover, the Plaintiff conceded (to an Agency interviewer) that he could lift 25 to 30 pounds.

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The ALJ found the Plaintiff not disabled based on a residual functional capacity for light work, with the attendant limitation of no more than occasional stooping or crouching. In other words, the ALJ concluded that the Plaintiff had a lower residual functional capacity than reviewing experts concluded was supported by the objective medical record or that the Plaintiff himself conceded.

The Plaintiff assigns error to the ALJ's treatment of Dr. Fornasier's opinion that the Plaintiff was "unable to work." The undersigned concludes to the contrary that the ALJ's decision to give that opinion little or no weight was supported by substantial evidence.

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. See, e.g., Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, a treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

As the ALJ correctly noted, Dr. Fornasier's opinion was not supported by objective medical evidence. Dr. Fornasier cited a lumbar CT myelogram in support of his opinion that Plaintiff's low back pain rendered him unable to work, but he acknowledged that this study showed no foraminal stenosis as a result of the protrusion at L5, that there was no evidence of compression, and that there was no impingement of the nerve root. Dr. Fornasier also conceded that an x-ray of the lumbar spine

9

was normal. Similarly, a magnetic resonance imaging scan ("MRI") of Plaintiff's lumbar spine showed only mild disc bulge at L5-S1 and no significant disc bulge or herniations. An MRI of the dorsal spine revealed an anterior wedging deformity of the T12 vertebral body consistent with Plaintiff's history of a previous compression fracture, but there otherwise no evidence of acute dorsal vertebral body injury or significant disc pathology.

Dr. Fornaiser's opinion was also contradicted by the objective findings and opinion of Plaintiff's treating orthopedist, Dr. Ralph Maxy, who concluded that Plaintiff was capable of lifting 40 pounds (although he should not engage in repetitive bending, twisting or stooping). Dr. Maxy explained the basis of his assessment, noting that x-rays and MRI studies did not show the focal etiology for Plaintiff's symptoms of low back pain, there was no evidence of radiculitis or radiculopathy, and that Plaintiff's T12 compression fracture was "old" with no evidence of an acute injury. Nor did Dr. Maxy's physical examinations indicate radicular findings or root tension signs.

With respect to Dr. Fornasier's claim that the Plaintiff's coronary artery disease rendered him unable to work, neither Dr. Fornasier's own notes nor other evidence of record supports this opinion. On February 4, 2005, a cardiac catheterization performed after Plaintiff complained of chest pain showed no significant coronary artery disease, normal chamber size, and normal wall motion. A chest x-ray confirmed no acute disease. Ten days later, when Plaintiff again presented to Dr. Fornasier with complaints of chest pain, rather than becoming concerned that the Plaintiff's pain was cardiac in nature, Dr. Fornasier concluded the Plaintiff's pain was likely musculoskeletal or gastrointestinal in nature, simply prescribing an antacid. In addition, although Dr. Fornasier indicated in his opinion letter that Plaintiff's coronary artery disease "ha[d] been unstable," his most recent treatment note specifically described Plaintiff's condition as "stable."

Also supportive of a finding of "nondisability" was Dr. Girmay's note indicating that the Plaintiff walked normally, had normal muscle strength and normal range of motion, except in his lower back; and that Plaintiff's limitations were only "moderate."

The Plaintiff also conceded to Agency interviewers and to Dr. Girmay that he was taking, at most, small amounts of over the counter medications to control his pain. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of effective treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

The record also establishes that the Plaintiff engaged in significant daily life activities, such as bathing and dressing himself, performing household chores, mowing the lawn, and driving. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work" which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities

and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's thoracolumbar disc disease and coronary artery disease – which could be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ properly found that the Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ thereafter correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," ultimately finding that the Plaintiff's subjective description of his limitations were not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly

established an inconsistency between Plaintiff's claims of inability to work and his objective ability to carry on a moderate level of daily activities, that is, Plaintiff's ability to take care of his personal needs, to perform some household chores, to mow the lawn, and to drive, as well as the above-recited evidence in the medical record.

Although the medical record establishes that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). And in this case, the facts noted by the ALJ clearly support the ultimate conclusion that the Plaintiff suffered from, but was not disabled by, his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #9) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED.**

Signed: January 17, 2007

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge